WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GlobalTranz Enterprises, Inc., | No. CV-18-04819-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Sean Michael Murphy, et al., | |
| Defendants. | |

Pending before the Court is Defendant Michael Murphy's motion to amend his answer by adding one new affirmative defense and two new counterclaims. (Doc. 64.) Plaintiff GlobalTranz Enterprises, Inc. ("GlobalTranz") has filed a response (Doc. 72) and Murphy has filed a reply (Doc. 73). For the following reasons, the motion will be granted in part and denied in part.

## BACKGROUND

On November 15, 2018, GlobalTranz initiated this action by filing a complaint in Maricopa County Superior Court against Murphy, DirectPoint Logistics, LLC ("DirectPoint"), and Armstrong Transport Group, LLC ("Armstrong"). (Doc. 1-3 at 24-46.) In broad strokes, the complaint alleges that GlobalTranz, a "logistics company specializing in freight management services," hired Murphy in March 2014 to act as a sales representative, that Murphy signed various agreements (including a non-disclosure agreement and a non-solicitation agreement) as part of his employment, and that Murphy breached those agreements by disclosing GlobalTranz's trade secrets to Armstrong (one of GlobalTranz's competitors) and DirectPoint (a company that Murphy founded in January 2018, a few weeks before resigning from GlobalTranz) and by diverting GlobalTranz's

customers to those entities. (*Id.* at 25-34.) Based on those allegations, the complaint asserts claims against Murphy for breach of contract (Count One), breach of fiduciary duty (Count Two), misappropriation of trade secrets (Counts Four and Five), tortious interference (Count Six), conversion (Count Seven), breach of the covenant of good faith and fair dealing (Count Eight), unjust enrichment (Count Nine), and civil conspiracy (Count Ten).

On December 14, 2018, Murphy filed an answer and asserted two counterclaims, one for unpaid overtime in violation of the Fair Labor Standards Act and the other for unpaid wages and overtime in violation of Arizona law. (Doc. 1-3 at 5-20.)

On December 19, 2018, Armstrong removed this action to federal court. (Doc. 1.)

On February 4, 2019, the parties filed the joint Rule 26(f) report. (Doc. 17.) In it, the parties stated they did not intend to add any parties. (*Id.* ¶ 4.) The Rule 26(f) report also contains no suggestion that the parties might wish to amend their pleadings. (*Id.*)

On February 11, 2019, the Court issued the Rule 16 scheduling order. (Doc. 19.) It established a deadline of April 12, 2019 to amend the pleadings. (*Id.* ¶ 2.)

On September 27, 2019, the Court held a telephonic discovery dispute hearing. (Doc. 47.) During this hearing, Murphy's counsel that that he had "previously" informed GlobalTranz's counsel "that I intended to file a motion to amend and include a claim for abuse of process and intentional inference, and [I] plan to do that as well." (Doc. 69 at 7-8.)

On December 2, 2019, Murphy filed the motion to amend. (Doc. 64.).

## ANALYSIS

Murphy seeks permission to amend his answer by adding one new affirmative defense and two new counterclaims. (Doc. 64 at 2 ["Murphy seeks to add an affirmative defense (failure to comply with A.R.S. §44-7001, *et. seq.* concerning electronic signatures) and two additional claims (Abuse of Process and Intentional Interference with Contract or Business Expectancy)."].) GlobalTranz does not oppose the request to add the new affirmative defense. (Doc. 72 at 2 n.1.) Accordingly, to the extent Murphy's motion seeks leave to add a new affirmative defense, it will be granted.

As for Murphy's request to add two new counterclaims, the analysis is complicated

by the fact that both parties have focused on the wrong legal standard.  Murphy contends his request is governed by Rule 15(a)(2), which instructs courts to apply a policy of "extreme liberality" when considering motions to amend (Doc. 64 at 1-2), and GlobalTranz seems to buy into the application of the Rule 15 framework in its response, albeit while arguing that relief is not warranted under Rule 15 due to futility and prejudice (Doc. 72 at 4-16).

What the parties overlook is that the Rule 16 scheduling order in this case set a deadline of April 12, 2019 to amend the pleadings.  (Doc. 19.)  Murphy has not complied with that deadline—his motion to amend was filed on December 2, 2019.  (Doc. 64.)  Accordingly, his request is governed by Rule 16(b)(4)'s "good cause" standard.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-608 (9th Cir. 1992).  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment."  *Id.* at 609.  *See also Leibel v. City of Buckeye*, 2019 WL 4736784, *2 (D. Ariz. 2019) ("After a deadline established in a Rule 16 scheduling order expires, a party seeking to amend its pleading must satisfy Rule 16's standards."); *Story v. Midland Funding LLC*, 2016 WL 5868077, *1 (D. Or. 2016) (same).  Under the standard, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end."  *Johnson*, 975 F.2d at 609.

Here, Murphy has not demonstrated the requisite degree of diligence.  Indeed, one of the reasons Murphy proffers in support of his amendment request is that *"[s]ince the onset of this litigation* GlobalTranz was warned on several occasions regarding the insufficiency of evidence and frivolous nature of claims against Murphy." (Doc. 64 at 3, emphasis added.)  But assuming this is true, it undermines, rather than supports, Murphy's ability to satisfy the Rule 16(b)(4) standard.  If Murphy has known all along that he may have a valid counterclaim against GlobalTranz for abuse of process, it was not diligent to

postpone the assertion of that counterclaim until eight months after the amendment deadline had elapsed (and on the cusp of the discovery cutoff).

Similarly, as for the other proposed new counterclaim, which is that "GlobalTranz . . . interfered [with] and caused harm to [Murphy's] agreement and business expectancy with Marshal Nebeker and Mr. Nebeker's company as a freight broker" (Doc. 64-1 at 22 ¶ 84), Murphy identified Nebeker as a potential witness in an MIDP disclosure in March 2019. (Doc 72-1 at 2.) Accordingly, it was not diligent for Murphy to wait until December 2019 to seek to add a counterclaim based on his relationship with Nebeker. As GlobalTranz correctly puts it, "it is clear from the disclosures that Murphy was fully aware of the relationship he held with Nebeker, as well as any change to that relationship, and thus fully aware of any potential claims. Nonetheless, Murphy waited until eight months after the deadline to amend the pleadings to propose an amendment to include an intentional interference cause of action." (Doc. 72 at 3.)

Notwithstanding all of this, Murphy seems to suggest that his amendment request should be considered timely because it is premised on new information he learned through the discovery process after September 27, 2019. (Doc. 73 at 4 ["While Murphy . . . ha[s] long asserted that GTZ's claims were without merit and likely subject to dismissal at summary judgment, Murphy's decision to proceed with a motion to amend is based in large part on evidence . . . that has coincidently surfaced since the Hearing on September 27."].) This argument is unavailing. First, as noted, Murphy acknowledges that he's been aware, since the very beginning of this case, of his potential counterclaims. Even if he recently discovered additional evidence that (in his view) strengthens those counterclaims, he has not attempted to explain (let alone justify) his failure to assert them by the April 12, 2019 amendment deadline. Second, the notion that the evidence supporting the proposed new counterclaims arose *after* September 27, 2019 is belied by Murphy's counsel's statement *during* the September 27, 2019 discovery hearing that he had "previously" informed GlobalTranz's counsel of his intention to pursue those counterclaims and planned to do so soon. (Doc. 69 at 7-8.) Third, in any event, Murphy contends that the key evidence supporting his abuse-of-process counterclaim surfaced for the first time during a deposition

on October 4, 2019. (Doc. 73 at 5.) But even assuming this is true, "a party [should] move to amend within weeks of learning new information." *Leibel*, 2019 WL 4736784 at *2. It was not diligent for Murphy to wait eight-and-a-half weeks after this deposition to file his motion to amend. *Id.*

Accordingly, **IT IS ORDERED** that:

(1) Murphy's motion to amend (Doc. 64) is **granted in part and denied in part**.

(2) Murphy must, within 14 days of this Order, file and serve a First Amended Answer and Counterclaims (which may include only the affirmative defense-related changes from the original Answer and Counterclaims that have been authorized in this Order); and

(3) Murphy must file, as an exhibit to his First Amended Answer and Counterclaims, a redlined version of the pleading that indicates how it differs from the original Answer and Counterclaims (Doc. 1-3 at 5-20).

Dated this 24th day of April, 2020.

Dominic W. Lanza
United States District Judge