**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GlobalTranz Enterprises, Inc., | No. CV-18-04819-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Sean Michael Murphy, et al., | |
| Defendants. | |

Pending before the Court is Defendant Michael Murphy's motion to compel Plaintiff GlobalTranz Enterprises, Inc. ("GlobalTranz") to produce three categories of documents. (Doc. 91.) For the following reasons, the motion will be granted in part and denied in part.

## BACKGROUND

On November 15, 2018, GlobalTranz initiated this action by filing a complaint in Maricopa County Superior Court against Murphy, DirectPoint Logistics, LLC ("DirectPoint"), and Armstrong Transport Group, LLC ("Armstrong"). (Doc. 1-3 at 24-46.) In broad strokes, the complaint alleges that GlobalTranz, a "logistics company specializing in freight management services," hired Murphy in March 2014 to act as a sales representative, that Murphy signed various agreements (including a non-disclosure agreement and a non-solicitation agreement) as part of his employment, and that Murphy breached those agreements by disclosing GlobalTranz's trade secrets to Armstrong (one of GlobalTranz's competitors) and DirectPoint (a company that Murphy founded in January 2018, a few weeks before resigning from GlobalTranz) and by diverting GlobalTranz's customers to those entities. (*Id.* at 25-34.) Based on those allegations, the complaint asserts

claims against Murphy for breach of contract (Count One), breach of fiduciary duty (Count Two), misappropriation of trade secrets (Counts Four and Five), tortious interference (Count Six), conversion (Count Seven), breach of the covenant of good faith and fair dealing (Count Eight), unjust enrichment (Count Nine), and civil conspiracy (Count Ten).

On December 14, 2018, Murphy filed an answer and asserted two counterclaims, one for unpaid overtime in violation of the Fair Labor Standards Act and the other for unpaid wages and overtime in violation of Arizona law. (Doc. 1-3 at 5-20.)

On December 19, 2018, Armstrong removed this action to federal court. (Doc. 1.)

On February 11, 2019, the Court issued the Rule 16 scheduling order. (Doc. 19.) It established a discovery deadline of October 25, 2019. (*Id.* ¶ 5.)

On September 23, 2019, the parties filed a joint notice asking the Court to resolve a discovery dispute, which concerned whether GlobalTranz should be compelled to produce certain materials from a different lawsuit. (Doc. 40.) Following a telephonic hearing, the Court granted Murphy's request in part and extended the discovery deadline to January 23, 2020 in light of the new production obligations. (Doc. 44.)

On December 13, 2019, the parties filed a joint motion to further extend the discovery deadline to February 21, 2020. (Doc. 70.) That request was granted. (Doc. 71.)

On January 13, 2020, the parties filed another joint notice asking the Court to resolve a discovery dispute, this one concerning whether GlobalTranz should be compelled to produce certain witnesses for depositions. (Doc. 75.) Following a telephonic hearing, the Court granted Murphy's request in part, holding that Murphy could depose some (but not all) of the witnesses in question. (Doc. 47.)

On February 13, 2020, the parties filed yet another joint notice of a discovery dispute. (Doc. 88.) This time, Murphy provided 10 pages of briefing, which violated the discovery-dispute procedure set forth in the Rule 16 scheduling order. (Doc. 19 ¶ 7(a).) Accordingly, the Court denied Murphy's affirmative discovery-related requests without prejudice to his ability to file a written motion to compel. (Docs. 89, 90.)

On February 28, 2020, Murphy filed the motion to compel. (Doc. 91.)

On March 11, 2020, GlobalTranz filed a response. (Doc. 96.)

On March 18, 2020, Murphy filed a reply. (Doc. 101.)

**ANALYSIS**

A. <u>Legal Standard</u>

Murphy seeks relief under Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure, which provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection."

Rule 26(b), in turn, defines the "Scope and Limits" of discovery. Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[1] Notably, under Rule 26(b)(1), "[i]nformation . . . need not be admissible in evidence to be discoverable." Finally, Rule 26(b)(2)(C) provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules if it determines," *inter alia*, that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

B. <u>Request One: GlobalTranz's New Employment Agreement For Inside Sales Agents</u>

First, Murphy seeks an order compelling GlobalTranz to produce the "new employment agreement [it] began using for newly hired employees during Murphy's

---

[1] The current version of Rule 26(b)(1) was enacted in 2015. An earlier version provided that the requested material had to be "relevant to the subject matter involved in the pending action," and the Ninth Circuit has recognized that the change in 2015 (under which "the 'subject matter' reference [was] eliminated from the rule, and the matter sought must be 'relevant to any party's claim or defense'") "was intended to restrict, not broaden, the scope of discovery." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020). *See also* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment (noting that Rule 26(b)(1) was amended in 1983 in part "to encourage judges to be more aggressive in identifying and discouraging discovery overuse," that the "clear focus of the 1983 provisions may have been softened, although inadvertently, by [subsequent] amendments," and that the 2015 amendment was intended in part to "restore[] the proportionality factors to their original place in defining the scope of discovery").

employment." (Doc. 91 at 2.) He contends this agreement is discoverable under Rule 26(b)(1) because he is being sued for violating the restrictive covenants in his employment agreement, Arizona law provides that the enforceability of a restrictive covenant turns on its reasonableness, and if GlobalTranz now requires its employees to submit to differently worded restrictive covenants, the change may bear upon the reasonableness of his covenants. (*Id.* at 2-5.) In support of this position, he cites *Health Mgmt. Assocs., Inc. v. Salyer*, 2015 WL 13776250 (S.D. Fla. 2015).

GlobalTranz disagrees, arguing that "the reasonableness of the terms in Murphy's 2014 Agreement with [GlobalTranz] will be determined by examining the totality of the circumstances of the facts particular to Murphy's case," not by examining "form contracts Murphy was never asked to sign," and that *Salyer* is distinguishable because the defendant in that case was challenging the enforceability of his restrictive covenant under a selective-enforcement theory (which Murphy isn't raising here). (Doc. 96 at 3-4.)

Murphy replies that the existence of the new agreement is relevant because (1) it establishes "an inconsistency and lapse in enforcement policies," (2) it "undermines and diminishes the nature of the interest [GlobalTranz] claims it is seeking to protect through the employment agreement at issue," and (3) if it is different from his agreement, "those differences would be relevant in assessing reasonableness of restrictive covenants at issue in this case, *i.e.,* whether the restraints in the agreement at issue in this case were greater than necessary to protect [GlobalTranz's] alleged interest." (Doc. 101 at 104.)

The discoverability of GlobalTranz's new contract presents a close call. On the one hand, it's not clear that the new contract would be admissible at trial for purposes of challenging the enforceability of the restrictive covenants contained in Murphy's contract. *Salyer* is distinguishable because it involved a selective enforcement claim[2] (which Murphy doesn't appear to be raising here), it's not clear that selective enforcement is even

---

[2] *Salyer*, 2015 WL 13776250 at *1 ("The Plaintiff is claiming that the Defendant is subject to non-compete agreements which the Defendant, by leaving his employment at the Sebastian hospital . . . for employment at the Vero Beach hospital . . . , breached. To defend against that claim, the Defendant is alleging the non-prior use, non-enforcement, and selective enforcement of non-compete agreements by the Plaintiff.").

- 4 -

a valid basis under Arizona law for challenging a restrictive covenant,[3] and Murphy has not cited any cases holding, or even suggesting, that an employee may demonstrate the unreasonableness of the restrictive covenants in his contract by introducing different contracts that other employees executed at other times.  (Indeed, even if such contracts theoretically had some utility in assessing the reasonableness of a particular employee's restrictive covenants, their introduction would potentially pose Rule 403 concerns.)  Also, it's not clear that the restrictive covenants appearing in the new contract differ from the ones in Murphy's contract—instead, Murphy seems to be speculating they *might* be different and then arguing that, *if* they are different, this might support a challenge to the reasonableness of his covenants.

On the other hand, Rule 26(b)(1) makes clear that the "[i]nformation . . . need not be admissible in evidence to be discoverable" and GlobalTranz has not cited any cases holding that other-contracts evidence is categorically inadmissible in a case involving a reasonableness challenge to a restrictive covenant.  Additionally, GlobalTranz is not making a proportionality challenge or arguing that its new contract is privileged or otherwise sensitive—its sole objection is a lack of relevance.

At bottom, Murphy has identified plausible reasons why the new contract could be relevant in this action.  Given Rule 26(b)(1)'s broad, albeit not unlimited, conception of relevance, Murphy's motion to compel as to the first category of discovery will be granted.

C.      Request Two: GlobalTranz's Standard Agreement For Outside Sales Agents

Second, Murphy seeks an order compelling GlobalTranz to produce "[a]ll documents referring or relating to Globaltranz'[s] policies or practices that discuss or

---

[3] *See, e.g., Larweth v. Magellan Health, Inc.*, 398 F. Supp. 3d 1281, 1292 (M.D. Fla. 2019) ("Larweth has failed to provide authority under any law that not enforcing restrictive covenants against other employees in any way impacts the enforceability of Larweth's restrictive covenants."); *Minnesota Mining & Mfg. Co. v. Kirkevold*, 87 F.R.D. 324, 336 (D. Minn. 1980) ("All things considered, the failure of 3M to attempt to enforce similar [restrictive] covenants against other former employees . . . [does not] estop 3M from enforcing the covenant in question.  For the Court to hold otherwise would effectively place employers in the precarious position of being compelled to enforce all such restrictive covenants with respect to all its former employees, which might encourage attempts to restrain trade, and which might undermine labor relations.").

- 5 -

address nature and scope of documents or information that Globaltranz authorizes or permits outside brokers or agents to access." (Doc. 91 at 6.) He contends that, because it is "undisputed that [GlobalTranz's] outside agents/brokers have access to [GlobalTranz's] databases, software, and the same or similar information regarding customers and prospective customers as [GlobalTranz's] inside sales employees," he needs the requested documents to determine whether GlobalTranz subjects its outside brokers to the same sorts of restrictive covenants to which he was subjected—a determination that will, in turn, shed light on the disputed issues of (1) whether his restrictive covenants are reasonable and (2) whether GlobalTranz took reasonable steps to protect its trade secrets. (*Id.* at 6-7.)

In response, GlobalTranz argues that Murphy's request should be denied because (1) it already produced one outside broker contract to Murphy, (2) it previously informed Murphy that it does not have any "policies or practices that discuss outside agent's access to [GlobalTranz's] proprietary computer system," (3) to the extent Murphy is seeking outside broker contracts from 2014-18, they are irrelevant because they predate the period during which Murphy served as an outside broker, and (4) Murphy's "failure to protect trade secrets" theory wasn't disclosed in his MIDP disclosures. (Doc. 96 at 2-4.)

In his reply, Murphy acknowledges that GlobalTranz has now produced its agreement with one outside broker but contends that GlobalTranz only did so in response to the motion to compel. (Doc. 101 at 3.) Murphy argues that the other outside broker contracts remain discoverable because "if [GlobalTranz's] agreements with outside broker/agents do not provide any restriction or obligations that flow to employees or other individuals working through the outside broker/agent with the direct contractual relationship with [GlobalTranz], that would significantly undermine [GlobalTranz's] alleged interest and the reasonableness of restrictive covenants at issue in this case." (*Id.* at 5.)

The analysis concerning GlobalTranz's outside broker contracts largely mirrors the analysis (in Part B above) concerning GlobalTranz's new form contract for employees. Although it is questionable whether such contracts will ultimately be admissible in this case, admissibility isn't a prerequisite to discoverability under Rule 26(b)(1), Murphy's

- 6 -

arguments concerning the documents' potential relevance have some plausibility, and GlobalTranz hasn't raised any concerns about burdensomeness or proportionality. Thus, Murphy's motion to compel as to the second category of discovery will be granted.

D. <u>Request Three: Personnel File</u>

Third, Murphy seeks an order compelling GlobalTranz to produce "certain documents" from the personnel file of Joel Rosenblatt, GlobalTranz's former vice-president of operations. (Doc. 91 at 7-10.) Specifically, Murphy seeks "all agreements Mr. Rosenblatt entered into with [GlobalTranz]; (2) documents related to his job performance, performance evaluations, or discipline he received during his employment with [GlobalTranz]; and (3) correspondence between Mr. Rosenblatt and [GlobalTranz] regarding his employment agreements, his continuing obligations after his separation of employment from [GlobalTranz], and any alleged violations thereof." (*Id.* at 10.) Murphy contends these documents are discoverable because Rosenblatt—who signed the complaint and some of the discovery responses in this case and who managed one of GlobalTranz's key accounts following Murphy's departure—was terminated by GlobalTranz in June 2019. (*Id.*) Murphy thus contends that the requested documents may contain evidence that Rosenblatt mismanaged the account following Murphy's departure (which would undermine GlobalTranz's ability to prove causation on its damage claims) and may contain severance agreements that "are relevant to [Rosenblatt's] potential bias or prejudice as a key trial witness in this case." (*Id.* at 9.) Murphy also cites cases recognizing that a company's personnel files "are not protected by any 'generic privacy privilege'" and may be subject to production in appropriate cases. (*Id.* at 9-10, citations omitted).

In response, GlobalTranz argues that nothing in Rosenblatt's personnel file could possibly be relevant to the claims or defenses in this action because (1) "Murphy did not report directly to Mr. Rosenblatt," and indeed "there were at least three layers of management between Mr. Rosenblatt and Murphy," and (2) "Rosenblatt left [GlobalTranz] eighteen . . . months after Murphy resigned," so "the timing of Mr. Rosenblatt's employment with [GlobalTranz] ending was far removed from Murphy's resignation." (Doc. 96 at 5.) GlobalTranz also argues that the cases cited in Murphy's motion are

- 7 -

distinguishable because they "involved the personnel files of an employee directly involved with the incident giving rise to the action," whereas "the only employee directly involved with Murphy's choice to take a [GlobalTranz] customer is Murphy." (*Id.* at 6.) Finally, GlobalTranz notes that Murphy already deposed Rosenblatt and asked questions related to the mitigation of damages during that deposition, so there is no reason to believe Rosenblatt's personnel file would somehow contain more evidence relevant to that topic. (*Id.*)

Murphy replies that Rosenblatt was involved in some of the conduct at issue in this case (because he assumed management of a key account after Murphy resigned); that if Rosenblatt's severance agreement contains a restrictive covenant, it may be relevant in assessing the reasonableness of Murphy's covenant; that any compensation owed to Rosenblatt under a severance agreement may be indicative of bias; and that if Rosenblatt was terminated for cause, this would undermine GlobalTranz's causation arguments. (Doc. 101 at 5-6.)

Murphy's motion to compel the production of sensitive documents from Rosenblatt's personnel file will be denied. This request has all the hallmarks of a fishing expedition—Murphy simply speculates that the documents in Rosenblatt's personnel file may support some of his defenses. Additionally, although Murphy is correct that personnel files may be subject to production in appropriate circumstances, it can't be overlooked that "personnel files, even of a party's agent, may contain information that is both private and irrelevant to the case, and that special care must be taken before personnel files are turned over to an adverse party." *Long v. Valley Forge Military Academy Foundation*, 2009 WL 10733869 (E.D. Pa. 2009) (quotation omitted). Thus, although the Court granted Murphy's request to compel production of the first two categories of documents despite the somewhat speculative nature of his relevance theories, the third category triggers different concerns. *See also Fritz v. Charter Tp. of Comstock*, 2010 WL 1856481, *1 (W.D. Mich. 2010) ("When the subject of a discovery request is personnel files, it is appropriate for the Court to require a heightened showing of relevance and need.").

Finally, one of the reasons why Murphy wishes to obtain the personnel file is

because Rosenblatt was the GlobalTranz employee who signed the complaint in this case. (Doc. 91 at 8.)  Elsewhere, Murphy has argued that he wishes to pursue a counterclaim against GlobalTranz for abuse of process, based on the theory that simply filing the complaint was tortious.  (Doc. 64.)  However, in a recent order, the Court concluded that Murphy could not amend his pleadings to assert such a counterclaim.  (Doc. 108.)  This further undermines Murphy's need to obtain Rosenblatt's personnel file—it is not relevant to the claims or defenses in *this* case.

E.   Attorneys' Fees

GlobalTranz included, in its response to the motion to compel, a request for attorneys' fees under Rule 37(a)(5).  (Doc. 96 at 1, 6.)

This request will be denied.  Rule 37(a)(5)(C) provides that when (as here) a motion to compel "is granted in part and denied in part, the court may . . . , after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Here, the Court will exercise its discretion to decline to award fees to either party.  Both sides' positions were substantially justified.

Accordingly, **IT IS ORDERED** that:

(1)   Murphy's motion to compel (Doc. 91) is **granted in part and denied in part**.

(2)   GlobalTranz must, within 14 days of the issuance of this order, produce (1) the new employment agreement that GlobalTranz began using in 2016/2017 for all newly hired employees, and (2) form agreements GlobalTranz used with outside agents/brokers during Murphy's employment.[4]

(3)   The dispositive motion deadline is April 28, 2020 (Doc. 110), which is before the documents at issue will be produced.  Accordingly, to the extent Murphy concludes, after receiving the documents, that they support his entitlement to summary judgment, the parties are ordered to confer about whether and how Murphy should be allowed to

---

[4]   The verbiage in paragraph (2) is derived from Murphy's proposed order (Doc. 91-1), after eliminating category three and the portion of category two seeking the MN contract (which the parties agree has now been produced).

supplement his summary judgment motion. Following the conferral process, the parties are ordered to file a joint notice summarizing their positions.

      Dated this 27th day of April, 2020.

_____
Dominic W. Lanza
United States District Judge